UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

EDIK ASADORIAN,

        Petitioner,

vs.                                                         Case No.:     3:17-cv-1241-MMH-JBT
                                                                                                3:15-cr-65-MMH-JBT

UNITED STATES OF AMERICA,

        Respondent.
_____/

## ORDER

This case is before the Court on Edik Asadorian's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1, § 2255 Motion) and pro se memorandum (Civ. Doc. 2, Memorandum).[1] A jury found Asadorian guilty of sex trafficking and traveling in interstate commerce to violate a protection order. Asadorian challenges his convictions based on three grounds of ineffective assistance of counsel. The United States has responded in opposition. (Civ. Doc. 6, Response). Although given the opportunity to file a reply brief (Civ. Docs. 5, 7), Asadorian has not done so. Thus, the case is ripe for a decision.

---

[1]     Citations to the record in the underlying criminal case, United States vs. Edik Asadorian, No. 3:15-cr-65-MMH-JBT, will be denoted "Crim. Doc. __." Citations to the record in the civil § 2255 case, No. 3:17-cv-1241-MMH-JBT, will be denoted "Civ. Doc. __."

1

Pursuant to 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[2], the Court has considered the need for an evidentiary hearing and determines that a hearing is not necessary to resolve the merits of this action. See Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015) (an evidentiary hearing on a § 2255 motion is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming the facts that he alleges are true, he still would not be entitled to any relief); Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007).[3] For the reasons set forth below, Asadorian's § 2255 Motion is due to be denied.

## I.  Background

On November 13, 2014, while living in New York, Asadorian and his girlfriend got into an altercation in their apartment. (Crim. Doc. 84, Trial Transcript, Vol. I at 63-65). Officers from the New York Police Department (NYPD) responded to the home, and Asadorian's girlfriend, V.D., told the officers that Asadorian had choked her. Id. at 66-67, 76-77. The officers arrested

---

[2]  Rule 8(a) of the Rules Governing Section 2255 Proceedings expressly requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before resolving a § 2255 motion.

[3]  Although the Court does not rely on unpublished opinions as precedent, they may be cited throughout this Order as persuasive authority on a particular point. Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits the Court to cite to unpublished opinions that have been issued on or after January 1, 2007. Fed. R. App. P. 32.1(a).

Asadorian for strangulation and assault, id. at 77-79, and took photographs of V.D.'s injuries (which were later admitted at trial) (see Crim. Doc. 58, Gov't Exhibits 1-1, 1-2, 1-3). The day after the arrest, the Criminal Court of Queens County, New York entered an order of protection against Asadorian, instructing him to stay away from V.D., not to go within 100 yards of her, and to refrain from communication or any other contact with her. See Trial Tr. Vol. I at 87-91; Gov't Ex. 3. The order stated it would remain in place until May 13, 2015, even if V.D. consented to having contact, and that Asadorian was advised in court of the order's issuance and its contents. See id. The order specifically advised Asadorian that it was a federal crime to cross state lines to violate the order. Id.

Shortly thereafter, Asadorian and V.D. resumed their relationship. Near the end of November 2014, they left New York for Florida. (See Crim. Doc. 85, Trial Transcript Vol. II at 65-68; Gov't Ex. 4). The two stopped in several cities along the way, including Charleston, South Carolina, where V.D. posted an online advertisement for body rubs with Asadorian's knowledge. Trial Tr. Vol. I at 216-17. They arrived at a hotel in Jacksonville, Florida on December 5, 2014. Gov't Exs. 8-1, 8-2. With Asadorian's knowledge, V.D. began posting advertisements for "sensual body work" and "Nuru slide" massages on Backpage.com, charging $150 for "incalls" and $200 for "outcalls." Gov't Ex.

3

B18; Trial Tr. Vol. I at 219-22. The advertisement contained four photographs of V.D. wearing lingerie. Trial Tr. Vol. I at 196-99.

An undercover detective responded to the advertisement and called V.D., who advised she was available for a night call to his address. Trial Tr. Vol. II at 20-21. V.D. advised the detective that the price for a body rub was $200 because she had to pay her driver, Asadorian, $50. Id. at 27. Asadorian drove V.D. to meet the undercover detective in Orange Park, Florida. Trial Tr. Vol. I at 243-44. V.D. met with the undercover officer and the two discussed what services she would provide. Trial Tr. Vol. II at 28. V.D. said she would provide a "Nuru Massage," Trial Tr. Vol. I at 244, which is "where you slide your body on somebody's else's body," Trial Tr. Vol. II at 27. V.D. assured the detective that he would feel good all over at the end of the massage. Id. at 28. V.D. brought a bag that contained lingerie and Nuru gel. Trial Tr. Vol. I at 188; Trial Tr. Vol. II at 86, 91. While meeting with the detective, V.D. called Asadorian to notify him she was safe. Trial Tr. Vol. II at 37-38.

Police officers arrested V.D. after she finished discussing the services she would provide. Id. at 41. They also arrested Asadorian while he was waiting for V.D. in the parking lot outside the residence where V.D. met with the officer. Id.

A federal grand jury eventually returned a two-count superseding indictment against Asadorian. (Crim. Doc. 26, Superseding Indictment). In

4

Count One, the grand jury charged Asadorian with transporting V.D. in interstate commerce to engage in prostitution and criminal sexual activity, in violation of 18 U.S.C. § 2421. In Count Two, the grand jury charged him with traveling in interstate commerce to violate a protection order, in violation of 18 U.S.C. § 2262(a)(1).

Asadorian pled not guilty to the charges and proceeded to trial. Over the course of three days, the jury heard testimony from nine witnesses for the government, including V.D., three NYPD officers, and four detectives involved in the investigation and arrest of Asadorian. The defense moved for judgment of acquittal at the conclusion of the government's case, Trial Tr. Vol. II at 114, but it did not present witnesses of its own. In moving for a judgment of acquittal, the defense asserted that the government had not met its burden of proof. Id. The Court denied the motion for judgment of acquittal, finding that the evidence was sufficient to allow the jury to render a guilty verdict as to both charges. Id. at 123–25. During closing arguments, the defense argued to the jury that the government's evidence was insufficient to prove that Asadorian was guilty of the charges. (Crim. Doc. 86, Trial Tr. Vol. III at 30-51). After deliberations, the jury returned a guilty verdict as to both counts in the Superseding Indictment. (Crim. Doc. 62, Jury Verdict).

The case proceeded to sentencing on April 11, 2016. At the conclusion of the sentencing hearing, the Court sentenced Asadorian to concurrent terms of

32 months in prison as to each count of conviction, followed by a five-year term of supervised release as to Count One and a concurrent term of supervised release of three years as to Count Two. (Crim. Doc. 71, Judgment).

Asadorian filed a notice of appeal, but the Eleventh Circuit Court of Appeals affirmed his conviction and sentence. United States v. Asadorian, 688 F. App'x 825 (11th Cir. 2017). This § 2255 Motion timely followed.

## II. Discussion

Pursuant to Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits collateral relief on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; and (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C § 2255(a) (2008). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184-86 (1979); Spencer v. United States, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc) ("[A] district court lacks the authority to review the alleged error unless the claimed error constitute[s] a fundamental defect which inherently results in a complete

6

miscarriage of justice." (internal quotation marks omitted)). The Supreme Court has recognized that a petitioner's claim that he received ineffective assistance of counsel in violation of the Sixth Amendment is properly brought in a collateral proceeding under § 2255. Massaro v. United States, 538 U.S. 500, 504 (2003).

To establish ineffective assistance of counsel, a § 2255 petitioner must demonstrate both: (1) that his counsel's conduct amounted to constitutionally deficient performance, and (2) that counsel's deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); Martin v. United States, 949 F.3d 662, 667 (11th Cir. 2020). In determining whether the petitioner has satisfied the first requirement, that counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994) (citing Strickland, 466 U.S. at 688). The petitioner must show, in light of all the circumstances, that counsel's performance fell outside the "'wide range of professionally competent assistance.'" Scott v. United States, 890 F.3d 1239, 1258 (11th Cir. 2018) (quoting Payne v. Allen, 539 F.3d 1297, 1315 (11th Cir. 2008)). In other words, "[t]he standard for effective assistance of counsel is reasonableness, not perfection." Brewster v. Hetzel, 913 F.3d 1042, 1056 (11th Cir. 2019) (citing Strickland, 466 U.S. at 687). To satisfy the second requirement, that counsel's deficient performance prejudiced the defense, the petitioner must show a

7

reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Martin, 949 F.3d at 667 (citing Padilla v. Kentucky, 559 U.S. 356, 366 (2010)). In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. Strickland, 466 U.S. at 695. However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697; see also Wellington v. Moore, 314 F.3d 1256, 1261 n.1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's] ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

### A. Ground One

First, Petitioner alleges that trial counsel gave ineffective assistance by failing to investigate or summon witnesses who allegedly would have provided favorable testimony. § 2255 Motion at 4; Memorandum at 7-14. According to Asadorian, these witnesses "would have proved he did not possess the requisite intent to violate the statute with which he was charged." § 2255 Motion at 4. Specifically, Asadorian asserts that the witnesses would have proven that, for purposes of 18 U.S.C. § 2262(a), he lacked specific intent to violate the New

8

York restraining order when he traveled across state lines with V.D. Memorandum at 9-10.

Asadorian states that, right before he and V.D. left New York for Florida, she went to a state courthouse and inquired about having the protection order lifted. See id. at 10–11. Upon returning to the vehicle, Asadorian claims that V.D. told him "everything was alright regarding the restrictive order and that they could leave for Florida." Id. at 11; see also id. at 12. Asadorian claims he simply relied on V.D.'s statement in deciding to leave New York, id. at 12–13, even though he admits it was a violation of the protection order to have had that contact with V.D. in the first place, id. at 7, 12.

Asadorian contends that counsel should have contacted the unnamed New York court employee with whom V.D. allegedly spoke about lifting the protection order. Id. at 10. He also asserts that counsel should have contacted his New York landlord, whom Asadorian notified in October 2014 of his intent to vacate the apartment and move to Florida. Id. Additionally, he argues that counsel should have cross-examined V.D. about the circumstances of their reconciliation, her alleged request that the protection order be lifted, and what she told Asadorian about requesting that the order be lifted. Id. at 11.

This claim lacks merit. "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely

9

speculative." Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978).[4] Even if counsel's failure to call a witness "appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it." Dingle v. Sec'y, Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) (quotation marks omitted). Thus, "[t]he mere fact that other witnesses might have been available ... is not a sufficient ground to prove ineffectiveness of counsel." Waters v. Thomas, 46 F.3d 1506, 1514 (11th Cir. 1995) (en banc) (citation omitted). Additionally, "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted) (cited by Estiven v. Sec'y, Dep't of Corr., No. 16-14056-D, 2017 WL 6606915, at *4 (11th Cir. Sept. 28, 2017) (denying COA)).

Here, Asadorian provides no affidavit or proffer of testimony from V.D., his former landlord, or the unnamed New York court employee setting forth what testimony they would have given. Thus, Petitioner has offered no evidence

---

[4] Decisions of the former Fifth Circuit Court of Appeals that were issued on or before September 30, 1981 are binding in the Eleventh Circuit Court of Appeals. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981).

that, even if these witnesses had testified (or if V.D. had been questioned as he argues), the testimony would have affected the outcome of trial. Notably, "speculation that the missing witnesses would have been helpful" "is 'insufficient to carry the burden of a habeas corpus petitioner.'" Johnson v. Alabama, 256 F.3d 1156, 1187 (11th Cir. 2001) (quoting Aldrich v. Wainwright, 777 F.2d 630, 636 (11th Cir. 1985)). Because Asadorian's "self-serving speculation" that the witnesses' testimony would have been favorable "will not sustain an ineffective assistance claim," Ashimi, 932 F.2d at 650, Asadorian has not shown that counsel's failure to call or question the witnesses was deficient or prejudicial under Strickland.

Moreover, Asadorian was not prejudiced by counsel's failure to elicit the aforementioned testimony because much (if not all) of it would have been irrelevant. Asadorian was advised of the issuance and contents of the protection order, including its prohibition on Asadorian having any contact with V.D. Trial Tr. Vol. I at 87-91; Gov't Ex. 3. The order notified Asadorian that it would remain in place even if V.D. consented to having contact with him, and that it was a federal crime to cross state lines to violate the order. Id. He was further advised that the protection order would remain in place until May 13, 2015. Id. That Asadorian may have notified his landlord in October 2014 of his intent to leave New York does not mean that it was permissible for him to leave New York with V.D. on or around December 1, 2014, after the protection order had

11

been issued in November 2014. And, although good-faith reliance on the advice of a government official, attorney, or other professional about a matter within their expertise might negate specific intent, see, e.g., United States v. Kottwitz, 614 F.3d 1241, 1271 (11th Cir. 2010) (good faith reliance on accountant's advice), opinion withdrawn in part on denial of rehearing, 627 F.3d 1383 (11th Cir. 2010), Asadorian could not have relied on V.D.'s statements about the order being lifted because she was not an expert. In any event, it is far from evident that Asadorian's reliance on V.D.'s statement was in good faith, especially considering that his contact with her was in violation of the order of protection and that he was advised that the protection order would remain in place until May 13, 2015, even if V.D. consented to having contact with him.

Accordingly, the claim in Ground One lacks merit and relief as to this claim is due to be denied.

**B. Ground Two**

Next, Asadorian contends that counsel gave ineffective assistance by denying him the right to testify. § 2255 Motion at 5; Memorandum at 14-19. Asadorian asserts that he decided to testify because of counsel's failure to call other witnesses to the stand. According to Asadorian, however, "[c]ounsel not only refused to accept the defendant's decision to testify on his own behalf and would not call him to the stand, but also failed to inform the defendant that this

12

was a constitutional right in which the ultimate decision was for him to decide." § 2255 Motion at 5. Asadorian alleges that counsel told him he was not allowed to testify and that counsel "decided the issue for him." Id.

A defendant has a constitutional right to testify in his behalf. Rock v. Arkansas, 483 U.S. 44, 51-53 (1987). That right is personal and fundamental; it cannot be waived by the court or trial counsel, but only by the defendant. United States v. Teague, 953 F.2d 1525, 1532 (11th Cir. 1992). Indeed, the defendant is the one "who above all others may be in a position to meet the prosecution's case." Ferguson v. Georgia, 365 U.S. 570, 582 (1961).

"[T]he appropriate vehicle for claims that the defendant's right to testify was violated by defense counsel is a claim of ineffective assistance of counsel under Strickland...." Teague, 953 F.2d at 1534. Counsel has a duty to "advise the defendant (1) of his right to testify or not testify; (2) of the strategic implications of each choice; and (3) that it is ultimately for the defendant himself to decide whether to testify." McGriff v. Dep't of Corrections, 338 F.3d 1231, 1237 (11th Cir. 2003) (citing Teague, 953 F.2d at 1533). Counsel performs deficiently where he or she "has refused to accept the defendant's decision to testify and refused to call him to the stand, or where defense counsel never informed the defendant of his right to testify and that the final decision belongs to the defendant alone." Gallego v. United States, 174 F.3d 1196, 1197 (11th Cir. 1999). If counsel has performed deficiently, the petitioner must further

13

establish prejudice, i.e., a reasonable probability that the outcome of the proceedings would have been different but for counsel's error. Strickland, 466 U.S. at 697; see also Nejad v. Att'y General, State of Ga., 830 F.3d 1280, 1290 (11th Cir. 2016).

While the decision to testify is the defendant's alone, an attorney does not render ineffective assistance by strategically advising a defendant not to take the stand. "[I]f defense counsel believes that it would be unwise for the defendant to testify, counsel may, and indeed should, advise the client in the strongest possible terms not to testify." Teague, 953 F.2d at 1533.

Here, the record refutes Asadorian's claim that trial counsel prevented him from testifying or that Asadorian was unaware he had the right to testify. The Court had several discussions on the record with Asadorian and his federal public defenders, Jeffrey Gedbaw and Maurice Grant, about his right to testify.

On the first day of trial, the Court advised Asadorian:

THE COURT:  I just want to remind you – and I think I did do this at the last status, but you have the right to testify in this case and you have the right not to testify. That choice is entirely yours. No one can force you to testify.

You need to make that decision. You should confer with your attorney, but in the end, it has to be your decision. Do you understand that?

[ASADORIAN]:  Yes, Your Honor.

14

> THE COURT:    All right. So I'm told that the Government may finish their case tomorrow.
>
> If Mr. Gedbaw stands up and announces that he rests and you have not testified, then I'm going to understand that you made that decision not to testify.
>
> Is that fair?
>
> [ASADORIAN]:    Yes, Your Honor.

Trial Tr. Vol. I at 297-98. Later that day, Mr. Gedbaw advised the Court that the only evidence the defense might put on would be Asadorian's testimony, but he was not yet certain of that. Id. at 299. Mr. Gedbaw stated that he would discuss both options with Asadorian, but that it was something Asadorian would need to decide after the government had completed its case. Id.

On the second day of trial, as the government was approaching the end of its presentation, Mr. Gedbaw notified the Court during a sidebar that he did not know if Asadorian was going to testify. Trial Tr. Vol. II at 94. Mr. Gedbaw stated that Asadorian had indicated that morning he was not going to take the stand, but that Mr. Gedbaw would need to consult with Asadorian to see if anything had changed. Id. The Court and Asadorian's public defenders agreed that, once the government had finished presenting its evidence, counsel should talk again with Asadorian about whether he wanted to testify. Id. at 95. The government rested its case a short time later and the Court prepared to recess for lunch. Before recessing, the Court reminded Asadorian's counsel to discuss

15

with him whether he wished to testify. Id. at 112-13. Once the Court reconvened, Mr. Gedbaw announced that "Mr. Asadorian does not wish to testify on his own behalf," and that the defense would rest its case when the jury returned. Id. at 113. Asadorian did not object to that statement.

The foregoing record establishes that Asadorian was aware of his right to testify and that he alone had the right to decide whether or not to testify. The record further shows that, contrary to his self-serving allegations, Asadorian decided not to testify. Moreover, Asadorian fails to explain how, in light of the evidence presented at trial, there is a reasonable probability the jury would have acquitted him even if he had testified. Accordingly, relief on the claim in Ground Two is due to be denied.

**C. Ground Three**

Finally, Asadorian asserts that counsel gave ineffective assistance during jury selection by failing to object when the presiding judge advised prospective jurors that Asadorian was not a citizen of the United States. Memorandum at 4. Asadorian alleges that the judge "capitalized on the issue and made emphasis to the jury on this point … implying he could be from one of the countries connected to drugs, prostitution, or drug cartels such as Mexico, or from the middle east countries connected to terrorism." Id.

Asadorian mischaracterizes the record. During jury selection, the Magistrate Judge advised the jury pool that Asadorian was not an American citizen in the context of asking the prospective jurors whether they could be fair and impartial. The judge stated:

> The defendant in this case, Mr. Asadorian, is not a citizen of this country. Under the laws of the United States a defendant who is not a citizen of the United States has the same constitutional rights in a criminal trial, including the presumption of innocence, as someone who is a citizen.

Is there anyone who will have difficulty following that rule of law? (Crim. Doc. 93, Jury Selection Transcript at 99). This question was agreed upon by the United States and defense counsel. Id. at 14–15. There was no reference to Asadorian's country of origin.

"The purpose of voir dire is to enable the defendant to evaluate the prospective jurors and select a fair and impartial jury." United States v. Vera, 701 F.2d 1349, 1355 (11th Cir. 1983). Asking prospective jurors whether the defendant's nationality or lack of citizenship will prejudice them is part of the process of ensuring that the jury is fair and impartial. Cf. United States v. Mendez, 490 F. App'x 287, 290–91 (11th Cir. 2012) (defendants argued that district court erred by not asking prospective jurors whether they would be biased by defendants' Honduran nationality, but the judge asked the jury pool this question). Here, the Magistrate Judge appropriately asked the jury pool whether they could be fair and impartial given Asadorian's lack of citizenship.

17

Because counsel had no ground on which to object, they did not render ineffective assistance by not doing so. Therefore, relief on the claim in this ground is due to be denied as well.

### III. Certificate of Appealability

The undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Asadorian "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct

in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

As such, and in accordance with the Rules Governing Section 2255 Cases in the United States District Courts, it is hereby **ORDERED:**

1. Petitioner Edik Asadorian's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1) is **DENIED**.

2. The Clerk is directed to enter judgment in favor of the United States and against Asadorian, and close the file.

3. If Asadorian appeals the denial of the petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida this 11th day of March, 2021.

MARCIA MORALES HOWARD
United States District Judge

lc 19
Copies:
Counsel of record
Petitioner

19